IN THE UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
APR 02 2019
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

UNITED STATES OF AMERICA, )
   Plaintiff, )
) Case No. : 5.17CR93 113
v. )
)
THOMAS E. LORENZ, )
   Defendant, )

DEFENDANT'S RESPONSE TO GOVERNMENT

Comes now, the Defendant, pro-se ex-parte, to this court to respond to the Government's arguments. To wit:

BACKGROUND

The First Step Act implemented the Bureau of Prisons' intent to use the term of imprisonment as the proper measure for good time credit and, separately, created a new and independent "earned time credit" system.

Title 1 of the First Step Act, entitled "Recidivism Reduction", consists of seven sections spanning 57 pages. The bulk of the title is set out in Section 101 and provides instructions for the Attorney General to create and to implement a "risk and needs assessment system" referred to in the legislation as "the System", along with recidivism reduction programming (promulgating 18 U.S.C. §§ 3631-3635). The legislation instructs that the System must provide incentives for participation in programming, with the central incentive being the possibility of earning "earned time

credit" to be "applied toward time in prerelease custody or supervised release." As part of the earned time credit system, Section 102 of the law adds subsection (g) to 18 U.S.C. § 3624. Under that provision, the BOP can place an "elgible prisoner" who has earned time credits equal to the time remaining on his sentence in prerelease custody (home confinement or residential reentry center) or transfer the prisoner to supervised release up to 12 months early.

1) THIS COURT HAS JURISDICTION

This Court has both constitutional and statutory jurisdiction to review the lawfulness of Mr. Lorenz's sentence and its execution. See 28 U.S.C. §§ 2241 and 2255 (providing statutory habeas corpus jurisdiction to determine the lawful-ness of a prisoner's detention); Boumediene v Bush, 553 U.S. 723, 739 (2008). ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom."); see also Kokkonen v Guardian Life Ins. Co. of America, 511 U.S. 375, 379-80 (1994) (recognizing ancillary jurisdiction as available to enable the court to manage its proceedings, vindicate its authority, and effectuate its decrees).

Concomitant with the Court's habeas jursidiction is the power to avoid Mr. Lorenz's unnecessary incarceration by providing conditional release, See Hensley v Municipal Court, 411 U.S. 345, 352 (1973) (habeas authority includes the power to "order [a] petitioner's release pending consideration of his habeas corpus claim") (citing in re Shuttlesworth, 369 U.S. 35 (1962)); Marino v Vasquez, 812 F.2d

499, 507 (9th Cir., 1987) (the authority of the court to conditionally release a prisoner pending habeas proceedings derives from the power to issue the writ itself.).

2) DEFENDANT IS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES

There is no requirement that Mr. Lorenz exhaust administrative remedies within the BOP before seeking relief from this Court. Exhaustion of administrative remedies is not at issue under 2255 or the Court's ancillary jurisdiction. And exhaustion is only a prudential consideration, not a jurisdictional requirement, under 2241. United States v Woods, 888 F.2d 653, 654 (9th Cir., 1989); Brown v Rison, 895 F.2d 533, 535 (9th Cir., 1990). Under the Supreme Court standard in Madigan v McCarthy, exhaustion is excused where 1) the prisoner faces irreparable harm from delay incident to pursuing administrative remedies; 2) there is some doubt whether the agency was empowered to render relief; or 3) the agency ahs indicated predetermination of the issue, rendering exhaustion futile. 503 U.S. 140, 146-49 (1992).

All three of the considerations in Madigan apply here. Without the Court's intervention, Mr. Lorenz faces imminent irreparable harm in the form of over service of his sentence given that his correct release date under the new law will impact his transfer to community control sanctions. He has been assigned to 4 months of halfway house beginning July 24, 2019. This is only 5 days after the current July 19, 2019 deadline for completion of the risks and needs assessment under section 101(a) of the Act. See 18 U.S.C. § 3632(a). As a practical matter, litigation of this

question will take more time than is available without causing irreparable harm. Futility is also at issue. The BOP is notifying prisoners in general that the retroactive amendment to the good time credit statute "is not effective immediately."

3) <u>DEFENDANT IS ENTITLED TO RELIEF (SEE: U.S. v WALKER, CASE No. 3:10-CR-00298, February 7, 2019)</u>

<u>The good-time fix appears independent of the other provisions in Title 1</u>. The First Step Act provides timelines for the implementation of the risk and needs assessment system. Specifically, it gives the Attorney General 210 days after enactment of the law within which to develop and publicly release the risk and needs assessment system, (promulgating 18 U.S.C. § 3632) Within 180 days after that, the Director of the BOP must assess each prisoner and begin to provide appropriate programming, (promulgating 18 U.S.C. § 3621(h)). At the end of Section 102(b), the law provides a delayed effective date for "this subsection" contingent on the release of the risk and needs assessment system:
(2) EFFECTIVE DATE. The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter 229 of title 18, United States Code, as added by section 101(a) of this Act. At issue here is whether it also delays the BOP's implementation of the independent good-time fix in section 102(b)(1)(A).

The Defendant's calculation for good time is:

```
Total sentence:  1.5 years
    Good time:  x 54 days per year
                ─────────────────
    Good time:    81 days
```

## 4) DUE TO THE DEFENDANT'S RELEASE DATE INTO COMMUNITY CUSTODY THE "EFFECTIVE DATE" SHOULD BE IMMEDIATE

The Good-Time Fix Should Be Construed To Be Effective Immediately Because the Delayed Effective Date Provision Is Rationally Connected Solely To The New Risk and Needs Assessment System. "[A]bsent a clear direction by Congress to the contrary, a law takes effect on the date of enactment." Gozlon-Peretz v United States, 498 U.S. 395, 403 (1991). Here the only potentially relevant effective date provision in Title 1 of the First Step Act explicitly links the need for a delay to the risk and needs assessment system. It states: "The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs system under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act." Although that provision considered on its own could rationally be read to encompass the good-time fix, the full statutory context as well as potential constitutional infirmities militate in favor of construing "this subsection" narrowly to mean only the newly promulgated subsection(g) of § 3624, which governs the new earned time credit transfer authority, leaving the good-time fix to be effective immediately in the absence of "clear direction by Congress to the contrary."

### The Statutory Context of "This Subsection" Favors Application of the Delayed Effective Date Only To Transfer Based on Earned Time Credits as Opposed To Release Based On Good Time Credits.

"[S]tatutory interpretation turns on the 'language itself, the specific context in which that language is used, and the broader context of the statute as a whole'." Nken v. Holder, 556 U.S. 418, 426 (2009) (quoting Robinson v Shell Oil Co., 519 U.S. 337, 341 (1997)). On its face, the text of the delayed effective date clause provides good reason to construe "this subsection" as referencing solely the new earned time credit transfer provision because of its contingency on the "date that the Attorney General completes and releases the risk and needs assessment system." Only the earned time credit provision has any relation to the risk and needs assessment system. The good time fix merely adjusts a calculation that the BOP has been making for decades; it requires no new system to implement and, thus, requires no delay. More over, the amendments in Section 102(b)(1)(B) repeatedly use the same phrase "this subsection" to mean subsection (g) of § 3624 that will govern earned-time transfer to prerelease custody. That phrase "this subsection" does not appear in Section 102(b)(1)(A) good-time fix. Thus, context strongly favors the narrow reading of delay applying only subsection (g).

Traditional tools of statutory construction support this proposed limiting construction of Section 102(b)(2) to solely include § 3624 (g) within the delayed effective date. First and foremost, courts "do not construe statutes in a manner that would lead to absurd results," nor do courts "impute to Congress an intent to create a law that produces an unreasonable result." United States v Casasola,

670 F.3d 1023, 1029 (9th Cir., 2012); see Mellouli v Lynch, 135 S. Ct. 1980, 1989 (2015) (rejecting agency construction of statute that "makes scant sense" given the need to avoid "consequences Congress could not have intended") (quoting Moncrieffe v Holder, 569 U.S. 184, 200 (2013)). There is an obvious need to delay implementation of the earned time transfer provision. The entirely new risk and needs assessment system must be in place before the BOP can begin using time credits earned under that system to determine which prisoners should be transferred to prerelease custody or supervised release.

By contrast, the good time credit system is not new, and it operates on a seperate plane from the earned time credit transfer and programming provisions of Title 1 the BOP has been touting the need for this amendment for many years. The good time credit amendment is a simple calculation. The SENTRY computer system of the BOP could implement the adjustment virtually OVERNIGHT.

5) <u>DEFENDANT'S ARGUMENT DOES NOT FAIL FOR TWO REASONS</u>

A. Nestled within Section 102(b) fo the First Step Act is the two-paragraph "good-time fix" amendment to 18 U.S.C. § 3624(b) that applies to this case and that provides in full:
Section 3624 of title 18, United States Code is amended (A) in subsection(b)(1). (i)by striking ", beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term", and inserting "of up to 54 days for each year of the prisoner's sentence imposed by the court,"; and (ii) by striking "credit for the last year or portion of a year of the term of imprisonment

shall be prorated and credited with in the last six weeks of the sentence" and inserting "credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment[.]"

B.  Those prisoners presently close to their release dates who have abided by all institutional rules during their incarceration would be held in custody to await the satisfaction of an unrelated condition precedent--the implementation of the risk and needs assessment system.

Extending Mr. Lorenz's deprivation of liberty with no countervailing purpose would violate the Due Process Clause and its equal protection component in violation of the Fifth Amendment. See Zadvydas v Davis, 533 U.S. 678, 690 (2001). "Freedom from imprisonment from government custody, detention, or other forms of physical restraint lies at the heart of the liberty that [the Due Process] Clause protects.

C.  Respectfully, Mr. Lorenz is not requesting a sentence reduction under the Frist Step act, but rather a recalculation of good time.

PRAYER FOR RELIEF

The Defendent respectfully requests that this Court, based on the arguements made, order the Bureau of Prisons to recalculate the Defendant's release date immediately to include the additional 7 day per year credit persuant to the First Step Act.

Under Oath.

Respectfully Submitted,

*Thomas E. Lorenz*

Thomas E. Lorenz

Dated: 4/1/2019